UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80073-CR-CANNON

UNITED STATES OF AMERICA

vs.

ANDRE TOOKES, JR.,

      **Defendant.**
_____/

## PLEA AGREEMENT

  The United States Attorney's Office for the Southern District of Florida ("this Office") and Andre Tookes, Jr. (hereinafter referred to as the "defendant") enter into the following agreement:

  1. The defendant agrees to plead guilty to the following count of the Indictment: Count 1, which charges the defendant with receipt child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2) and (b)(1).

  2. This office agrees to seek dismissal of counts 2 – 10 of the Indictment, as to this defendant, after sentencing.

  3. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory

sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range, the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that the Court must impose, as to Count 1, a minimum term of imprisonment of five (5) years and may impose a statutory maximum term of imprisonment of up to twenty (20) years, followed by a term of supervised release of five (5) years up to life. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000. The Court may order forfeiture and must order restitution as outlined below.

5. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, pursuant to Title 18, United States Code, Section 3013, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that this special assessment shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

6. The defendant further understands and acknowledges that, pursuant to Title 18, United States Code, Section 3014, a special assessment in the amount of $5,000 will be imposed on the defendant if he is not indigent and is pleading guilty, in Count 1, to offenses under Chapter 110 (relating to sexual exploitation and other abuse of children). The defendant agrees that this special assessment shall not be payable until the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim-compensation arising from the criminal conviction, upon which this special assessment is based.

7. The defendant understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, pursuant to Title 18, United States Code, Sections 2259 and 2259A, the Court shall order the defendant to pay restitution because he is pleading guilty to an offense under Chapter 110. The parties agree that any restitution ordered by the Court under Title 18, United States Code, Sections 2259 and 2259A, shall include the defendant's total offense conduct.

8. Pursuant to Title 18, United States Code, Section 3663A(a)(3), the parties agree that restitution is not limited to Count 1, the offenses of conviction in this case. The defendant agrees to pay restitution to any victims identifiable prior to the imposition of sentence, including victims of dismissed counts, relevant conduct, and any charged or uncharged child pornography offenses, which represents the full amount of those victims' losses as that term is defined in Title 18, United States Code, Section 2259(b)(3). The defendant further agrees that restitution is due pursuant Title 18, United States Code, Section 3663A(c)(1), for offenses and identifiable victims who have suffered a physical injury or pecuniary loss other than those he is pleading guilty to, but nonetheless gave rise to this plea agreement.

9. The parties further understand and acknowledge that the amount of restitution the defendant will be ordered to pay will be calculated pursuant to Title 18, United States Code, Sections 2259 and 2259A. Specifically, the Court will first determine the full amount of each victim's losses that were incurred, or are reasonably projected to be incurred by the victim, as a result of the trafficking of child pornography depicting the victim. The parties understand and acknowledge that, once the full amount of the victim's losses is determined, the Court will then order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000. The parties further understand and acknowledge that any individual victim's total aggregate recovery shall not exceed the full amount of that victim's demonstrated losses.

10. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

11. This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

A. <u>The Base Offense Level</u>: That the applicable Base Offense Level is **22** pursuant to U.S.S.G. § 2G2.2(a)(2) shall be applied.

B. <u>Special Offense Characteristics</u>:

i. That the special offense characteristic decreasing the offense level by **2** levels pursuant to U.S.S.G. § 2G2.2(b)(1) shall be applied;

ii. That the special offense characteristic increasing the offense level by **2** levels pursuant to U.S.S.G. § 2G2.2(b)(2) shall be applied;

iii. That the special offense characteristic increasing the offense level by **4** levels pursuant to U.S.S.G. § 2G2.2(b)(4) shall be applied;

iv. That the special offense characteristic increasing the offense level by **2** levels pursuant to U.S.S.G. § 2G2.2(b)(6) shall be applied;

v. That the special offense characteristic increasing the offense level by **5** levels pursuant to U.S.S.G. § 2G2.2(b)(7)(D) shall be applied.

C. <u>Adjusted Offense Level</u>: That the applicable adjusted offense level under all of the circumstances of the offenses committed by the defendant is **Level 33**.

12. This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court impose a sentence at the low end of the advisory sentencing guideline range produced by application of the Sentencing Guidelines. Although not binding on the probation office or the Court, this Office and the defendant further agree that, except as otherwise expressly contemplated in this Plea Agreement, they will jointly recommend that the Court neither depart upward nor depart downward under the Sentencing Guidelines when determining the advisory sentencing guideline range in this case.

13. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an

additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

14. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office, or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

15. The defendant agrees to forfeit to the United States voluntarily and immediately all of his right, title and interest to the following property, which is subject to forfeiture pursuant to Title 18, United States Code, Section 2253:

    A. Samsung cell phone, serial #R9AR115252J.

The defendant agrees that the above-listed assets represent: matter that contains a visual depiction of child pornography, which was produced, transported, mailed, shipped, or received in violation of Chapter 110 of Title 18 of the United States Code; or property used or intended to be used to commit, facilitate, or promote the commission of the offense as alleged in Count 1 of the Indictment.

16. The defendant further agrees to fully cooperate and assist the Government in the forfeiture of the listed property and to take whatever steps are necessary to pass clear title to the United States, including, but not limited to, the surrender of documents of title, execution of any documents necessary to transfer his interest in the above property to the United States, execution of a consent to forfeiture or other documents as may be needed to fully accomplish the forfeiture and vest title in the United States. The defendant further knowingly and voluntarily waives the following rights as to property subject to forfeiture: (1) all constitutional, legal and equitable defenses to the forfeiture of the assets in any judicial or administrative proceeding; (2) any judicial or administrative notice of forfeiture and related deadlines; (3) any jeopardy defense or claim of double jeopardy, whether constitutional or statutory; (4) any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the property by the United States; and (5) any right to appeal any order of forfeiture entered by the Court pursuant to this plea agreement. The defendant further understands that the

forfeiture of the property shall not be treated as satisfaction or offset against any fine, restitution, cost of imprisonment, or any other penalty this court may impose on the defendant.

17. The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney. The defendant further agrees, together with this Office, to request that the Court enter a specific finding that the defendant's waiver of his right to appeal the sentence imposed in this case was knowing and voluntary.

18. The defendant understands that by pleading guilty, he will be required to register as a sex offender upon his release from prison as a condition of supervised release pursuant to Title 18, United States Code, Section 3583(d). The defendant also understands that independent of supervised release, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout the defendant's life. The defendant understands that he shall keep his registration current, shall notify the state sex offender registration agency or agencies of any changes to the defendant's name, place of residence, employment, or student status, or other relevant information. The defendant shall comply with requirements to periodically verify in person the defendant's sex offender registration information. The defendant understands that he will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. The defendant further understands that, under Title 18, United States Code, Section 4042(c), notice will be provided to certain law enforcement agencies upon the defendant's release from confinement following conviction.

19. As a condition of supervised release, the defendant shall register with the state sex offender registration in the state of Florida and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer. The defendant shall comply with all requirements of federal and state sex offender registration laws, including the requirement to update the defendant's registration information. The defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment.

20. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: _____  By: _____
GREGORY SCHILLER
Digitally signed by GREGORY SCHILLER
Date: 2023.05.09 13:24:34 -04'00'
GREGORY SCHILLER
ASSISTANT UNITED STATES ATTORNEY

Date: 5/8/23  By: _____
SCOTT BERRY
ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 5/8/23  By: _____
ANDRE TOOKES, JR.
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80073-CR-CANNON

UNITED STATES OF AMERICA

vs.

**ANDRE TOOKES, JR.,**

        **Defendant.**
_____/

## FACTUAL PROFFER

The United States of America and Andre TOOKES, Jr. ("Defendant" or "Tookes") agree that if this case had gone to trial, the United States would have proven the following facts beyond a reasonable doubt:

1. In the early morning hours of March 31, 2023, personnel from Homeland Security Investigations (HSI) executed federal search warrants issued in the Southern District of Florida at the Greenacres, Florida, residence of TOOKES. TOOKES had been investigated for purchasing child pornography from a seller in South Africa known to be L*****-P***-S**** and T***L***F**.[1], through the use of a mobile smart phone application hereinafter referred to as "Chat Application A" and payment methods through PayPal.

2. After knocking and announcing the search warrant, HSI entered the TOOKES' premises and ordered that any occupants must exit the residence. TOOKES was inside the residence and exited the residence while holding a Samsung cell phone, in his hand. TOOKES and one additional occupant in the residence were detained until the scene was deemed to be safe.

---

[1] As the investigation is ongoing, the full user name has been redacted but is known to the Government and the Defendant through counsel.

3. TOOKES was advised of his *Miranda* rights, which he waived. He stated he had been living at this residence for several years, and he was the only individual who had access to and the passcode for his Samsung cell phone, serial #R9AR115252J. TOOKES provided his phone number of 561-932-6416 and email address of atj06@yahoo.com. These are the same identifiers HSI agents knew to be linked to TOOKES PayPal account from which he sent numerous payments to the child pornography seller identified above.

4. TOOKES was informed that there was an investigation into an individual in South Africa who was selling child pornography through Chat Application A, and that there was information that TOOKES, along with other individuals, had sent money to this seller. TOOKES confirmed that he had purchased child pornography several times through Chat Application A and used PayPal to send the money. TOOKES was able to recall the seller's username of T\*\*\*L\*\*\*F\*\*. TOOKES advised he was in a chatroom on Chat Application A that was geared towards Latin women and adult pornography, when the child pornography seller entered the chatroom and advertised the sale of child pornography. The seller was kicked out of the chatroom by the room administrators due to the fact that the chatroom was not created for child pornography. However, TOOKES then communicated with the seller via private/direct messages.

5. TOOKES stated that he started purchasing and viewing child pornography about one year ago, and that he has only accessed and purchased child pornography through Chat Application A. He stated that this specific child pornography seller had numerous different packages advertised for different races of children. TOOKES confirmed that each $70.00 payment he sent the seller was for fifty videos of child pornography, specifically black children only. When agents asked him why he paid for videos of specifically black children, and he stated it was because he is black. TOOKES stated that the youngest age he recalled viewing in the child

pornography videos he purchased was toddler-aged. TOOKES also confirmed that he knew child pornography meant depictions of children under the age of 18 involved in sexual activity, and that it was illegal to possess or purchase this material.

6. TOOKES provided the passcode to his cell phone. While on scene, computer forensics investigators began an initial extraction of his cell phone which did not reveal any child pornography within his camera gallery. TOOKES told agents that there was no child pornography on his phone or any devices, as he had deleted Chat Application A, deleted his account on Chat Application A, deleted the content within Chat Application A, and could not access account if he tried. He claimed the last time he tried to log into Chat Application A was in January 2023, that he but could not because Chat Application A told him his profile had been deleted. TOOKES provided consent for agents to reinstall Chat Application A on his phone and attempt to access his account to verify this information and recover evidence.

7. Computer forensics investigators were able to gain access to TOOKES Chat Application A account on TOOKES phone, which immediately showed that content, messages, and media still existed within his account. Chat Application A revealed the messages and media between TOOKES and seller T***L***F** still existed, from on or about April 21, 2022 through March 30, 2023. During that timeframe, there were numerous occasions where the seller stated he was still selling videos, and TOOKES purchased child pornography videos from him. During these instances, the seller would provide TOOKES his PayPal account information, TOOKES would send the seller a screenshot as proof that payment was sent via PayPal. The seller would then send TOOKES the amount of child pornography videos purchased, and the seller would state that there were more videos to be purchased if he wanted.

8. For example, on or about May 25, 2022, TOOKES sent the seller a screenshot from PayPal showing that TOOKES sent him $55.00. After doing so, the seller sent TOOKES approximately fifty (50) videos directly through Chat Application A. The videos depicted children of mixed races. One of the videos had a file name of "1_5095911416041308276", was about 1 minute and 43 seconds long, and depicted a white female, approximately two to four years' old, laying on her back, wearing a light-colored long sleeve shirt and was nude from the waist down. In the video she was vaginally penetrated by an adult's penis. In another 30-second-long video titled, "1_5163602802160697658" an Asian female, approximately two to four years' old, performed oral sex on an adult male.

9. Agents spoke with TOOKES again about the evidence located in his Chat Application A account. He acknowledged that he previously lied during the interview regarding his account being deleted, the content being deleted, and his last purchase. He admitted that he did purchase child pornography as recent as March 30, 2023.

10. Based on these facts and other information known to the parties, TOOKES agrees that, had this case gone to trial, the government would have proven beyond a reasonable doubt, as to Count 1 of the Indictment, that TOOKES received child pornography in violation of Title 18, United States Code, Section 2252A(a)(2) and (b)(1), on May 25, 2022, such that:

    a. the Defendant knowingly received an item or items of child pornography;
    b. the item or items of child pornography had been received using any means or facility of interstate or foreign commerce or had been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; and

c. when the Defendant received the items, the Defendant believed the items were or contained child pornography.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: _____   By: GREGORY SCHILLER
Digitally signed by GREGORY SCHILLER
Date: 2023.05.09 13:25:10 -04'00'
GREGORY SCHILLER
ASSISTANT UNITED STATES ATTORNEY

Date: 5/8/23   By: _____
SCOTT BERRY
ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 5/8/23   By: _____
ANDRE TOOKES, JR.
DEFENDANT